UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
Plaintiff,

v.                                                              **CRIMINAL NO.: 04-0381(DRD)**

**[1] NELSON ACEVEDO-CRUZ**
**[2] NORAIDA BELTRAN,**
Defendants

### AMENDED OPINION AND ORDER

At the close of this case defendants have renewed previous arguments through the filing of a Fed.R.Civ.P. 29(c) *Motion for Judgment of Acquittal*. (Docket No. 130). Through said motion, the defendants reiterated previous trial objections, made pursuant to Rule 29(a) and (b). The Court is prepared to address the issues raised in the defendants' Rule 29 motion thereby precipitating a conclusion to these proceedings and moving to sentencing.

For the reasons stated below, defendants' Rule 29 request is **DENIED**.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 2004, Mr. Nelson Acevedo Cruz and Mrs. Noraida Beltran ("defendants") were indicted with *conspiracy to infringe copyright* for knowingly and willfully, combining, conspiring and agreeing with each other, and other persons known and unknown to the Grand Jury to commit an offense against the United States, that is, to willfully infringe the copyright of copyrighted works, to wit, motion pictures, for the purpose of commercial advantage or private financial gain, by reproducing and distributing during a one hundred eighty (180) day period, ten (10) or more copies of one or more copyrighted works. (Docket No. 2). The indictment purports the time frame of the conspiracy to be from sometime on or around the Summer of 2003 to the date of the

indictment.

On November 23, 2005, the Jury in the instant case returned guilty verdicts as to Counts 1 through 9 as to Acevedo Cruz, and as to Counts 1, 2, and 5 through 9 as to his wife Mrs. Beltran. Shortly thereafter, defendants filed their *Motion for Judgment of Acquittal Under Rule 29(c) of the Federal Rules of Criminal Procedure* which they later supplemented with their filing of their *Supplementary Motion to Defendants' Motion Under Rule 29(c) Requesting Dismissal and Acquittal for Lack of Jurisdiction*. (Docket Nos. 130, and 138 respectively).

## II. LEGAL FRAMEWORK

### A. THE SUFFICIENCY OF THE EVIDENCE STANDARD

The First Circuit has been clear as to the legal standard to be used by the Court when considering Rule 29 motions regarding challenges to the sufficiency of the evidence presented by the Government. "If the evidence presented, taken in the light most flattering to the prosecution, together with all reasonable inferences favorable to it, permits a rational jury to find each essential element of the crime charge beyond a reasonable doubt, then the evidence is legally sufficient." United States v. Olbres, 61 F.3d 967, 970 (1st Cir.), *cert. denied*, 516 U.S. 991 (1995); *see also* Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); United States v. Gifford, 17 F.3d 462, 467 (1st Cir. 1994); United States v. Castro-Lara, 970 F.2d 976, 979 (1st Cir. 1992), *cert. denied*, 508 U.S. 962, 113 S.Ct. 2935, 124 L.Ed.2d 684 (1993); United States v. Hernandez, 146 F.3d 30, 32 (1st Cir. 1998).

When examining the sufficiency of the evidence presented at trial, the court may not evaluate credibility. Moreover, all credibility issues must necessarily favor the verdict. *See* United States v. Garcia, 983 F.2d 1160, 1163-64 (1st Cir. 1993). "In evaluating sufficiency, both direct and

circumstantial evidence are accorded weight." Olbres, 61 F.3d at 970; *see also* United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994) ("[T]he criminal law does not place a special premium on direct evidence."). Furthermore, "[t]he prosecution may satisfy its burden of proof by direct evidence, circumstantial evidence or any combination of the two." United States v. Herenandez, 146 F.3d 30, 33 (1st Cir. 1998). In fact, the evidenced utilized to convict "may be entirely circumstantial[.]" United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir. 1991); *see also* Olbres, 61 F.3d at 970 ("When, as now, a criminal defendant mounts a sufficiency challenge, all the evidence, direct and circumstantial, is to be viewed from the government's coign of vantage. Thus, the trial judge must resolve all evidentiary conflicts and credibility questions in the prosecution's favor; and, moreover, as among competing inferences, two or more of which are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt."); United States v. Taylor, 54 F.3d 967, 974 (1st Cir. 1995); United States v. Rothrock, 806 F.2d 318, 320 (1st Cir. 1986).

The Court is mindful that "if the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence [the] court must reverse the conviction." United States v. Flores-Rivera, 56 F.3d 319, 323 (1st Cir. 1995). Yet, so long as the evidence taken as a whole, warrants a judgment of conviction, the Court "need not rule out other hypotheses more congenial to a finding of innocence.'" Olbres, 61 F.3d at 970 *citing* Gifford, 17 F.3d at 467.

**B.    FIRST SALE DOCTRINE**

The defendant first attempt to find a safe harbor to evade conviction on the First Sale Doctrine.

Provided that neither the First Circuit Court of Appeals nor any of its member districts have

addressed the first sale doctrine in the domain of the First Circuit, the Court will now turn to the discussions espoused by the other Circuits in order to elucidate the applicable doctrine herein claimed by defendants.

Congress, through the Copyright Act, 17 U.S.C. § 1 *et seq.*, furnished copyright proprietors with the right "to print, reprint, publish, copy and vend the copyrighted work." In turn, the *First Sale Doctrine* stems from 17 U.S.C. § 27 (1976) which mandates that "nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained." Thus, where a copyright owner parts with title to a particular copy of his copyrighted work, he divests himself of his exclusive right to vend **that particular copy**. As such, the doctrine recognizes that copyright law does not forbid an individual from renting or selling a copy of a copyrighted work which was lawfully obtained or lawfully manufactured by that individual. *See* United States v. Cohen, 946 F.2d 430, 434 (6th Cir. 1991); United States v. Drum, 733 F.2d 1503, 1507 (11th Cir. 1984); United States v. Powell, 701 F.2d 70, 72 (8th Cir. 1983); United States v. Moore, 604 F.2d 1228, 1232 (9th Cir. 1979); United States v. Whetzel, 589 F.2d 707, 712 n.21 (D.C.Cir. 1978). In sum, once the copyright proprietor transfers a particular copy of his work to another person under conditions which satisfy the *First Sale Doctrine* as transcribed above, the statute does not restrict further transfers of **that** copy. *See* United States v. Bily, 406 F.Supp. 726, 731 (E.D.Pa. 1975). This is precisely the reason why video stores are able to rent copies of videocassettes and/or DVDs to consumers who do not wish to own them, or may desire to purchase them, but only if these rented copies **have been legally obtained through purchase, trade or gift**. However, the transferee (defendants herein) still **may not** make copies of his copy without authorization. Id.

As is pellucid from the above, the doctrine is only applicable to **lawfully** made copies. Accordingly, legitimately acquired copies may be re-sold, distributed or rented. Albeit, this cannot be interpreted as allowing the further reproduction of a particular, legally obtained copy without proper authorization and its distribution of said reproductions. Conclusively, then, "a pirated tape that is reproduced form the original recording without authorization is **plainly not** the subject of the first sale." Moore, 604 F.2d at 1232 (*emphasis ours*).

The court finds that the facts present to the jury "examined in the light most flattering to the prosecution," United States v. Albres, 61 F.3d at 970, are clearly inapposite to the application to this doctrine in the instant case. (See discussion infra).

**C.    WILLFUL / KNOWLEDGEABLE COPYRIGHT INFRINGEMENT**

Defendants then allege that there is no proof that the defendants acted willfully.

In its pertinent part, 17 U.S.C. § 506(a) details as criminal any "person who infringes a copyright willfully and for purpose of commercial advantage or private financial gain." When determining the extent of the term *willfully* (if the intent to copy and not to infringe is sufficient as juxtaposed to the need of a showing of specific intent to violate a known legal duty) the Court must look to that determined by the Supreme Court in Cheek v. United States, 498 U.S. 1992, 111 S.Ct. 604 (1991). Therein the Court held that the term *willful* entails a voluntary, intentional violation of a known legal duty. *See e.g.* United States v. Heilman, 614 F.2d 1133, 1137-38 (7th Cir.) *cert. denied*, 447 U.S. 922, 100 S.Ct. 3014 (1980); Untied States v. Cross, 816 F.2d 297, 300-01 (7th Cir. 1987); United States v. Moran, 757 F.Supp. 1046 (D.Neb. 1991); 3 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT §15.01 (1990); *cf.* United States v. Backer, 134 F.2d 533, 535 (2nd Cir. 1943); Untied States v. Taxe, 380 F.Supp. 1010 (C.D. Cal. 1974) *aff'd*, 540 F2d 961 (9th Cir. 1976).

Finally, provided that the legislative history regarding the use of the word *willful* in the statutes criminalizing copyright infringement is not helpful, the Court also looks to civil copyright infringement case law and the applicability therein of the criminal statute. *See* United States v. Wise, 550 F.2d 1180, 1188 n.14 (9th Cir.) *cert. denied*, 434 U.S. 929, 98 S.Ct. 416 (1977); Moran, 757 F.Supp. at 1049-50. The Circuit Courts that have confronted the issue have all adopted *willful* as to mean that the infringement was with knowledge that the defendant's conduct constituted copyright infringement for purposes of 17 U.S.C. § 506(a). *See* Cable/Home Communication v. Network Productions, 902 F.2d 829 (11th Cir. 1990); Broadcast Music, Inc. v. Xanthas, Inc., 855 F.2d 233, 236 (5th Cir. 1988); RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 779 (8th Cir. 1988); Fitzgerald Publishing Co., Inc. v. Thomas Publishing Co., Inc., 807 F.2d 1110, 1115 (2nd Cir. 1986). This, added to the fact that there is absolutely nothing in the text of the criminal copyright statute or its legislative history suggesting the meaning Congress attributed to *willful*, the court finds there is no compelling reason to adopt a less stringent requirement in the criminal copyright context than in the civil context.

**D.     CERTIFICATES OF REGISTRATION**

The defendants further allege that the certificates of registration of the copyrighted works presented in evidence are insufficient.

It is unquestionable that a certificate of registration is *prima facie* evidence of the validity of the copyright and the facts contained in the certificate. *See* 17 U.S.C. § 410. Specifically, subsection (c) of the statute provides that:

> [i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary

weight to the be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

**E.     VALIDITY OF SEARCH WARRANTS**

The First Circuit Court of Appeals has established that "[w]here goods are of a common nature and not unique there is no obligation to show that the one[s] sought [ ] necessarily are the ones stolen, but only to show the circumstances indicating this to be likely." United States v. Klein, 565 F.2d 183, 189 (1st Cir. 1977) (*citing* United States v. Scharfman, 448 F.2d 1352, 1354 (2nd Cir. 1971) *cert. denied*, 405 U.S. 919, 92 S.Ct. 944 (1972)).  Thus, there are particular situations in which a general search warrant is meritorious and authorized.

Although not directly on point, historic decisions penned by the Supreme Court do provide a basic guidance as to when a generic description is sufficient to uphold a search and seizure in compliance with the Fourth Amendment of our Constitution.  The Supreme Court detailed in Steele v. United States No. 1, 267 U.S. 498, 45 S.Ct. 414 (1925) that the mere description of *cases of whisky* contained in the search warrant was specific enough to uphold a search warrant.  Id. at 504 (*citing* Elrod v. Moss, 278 F. 123 (4th Cir. 1921)).  Furthermore, upon a close reading of *Elrod*, it is clear to this Court that the Fourth Circuit reasoned that the generic description was sufficient due to whiskey being contraband during prohibition.  That is to say, the imprecision of a generic description did not endanger a citizen for he could would not be deprived of a lawful property provided that the property object of the description was, in fact, illegal.  As the Fourth Circuit explained:

> [t]he protection of the rights of the accused does not require that the Constitution be construed to exact the same degree of particularity of description in search warrants for contraband liquors, because **there is no right of property** in contraband liquor, and hence there can be no danger to the citizen of being deprived or property which he is lawfully entitled to hold against the state.

Id. at 129 (*emphasis ours*).  (Compared to right of property over bootleg copies of copyrighted movies.)  However, the First Circuit has further explained that "[t]he adequacy of a warrant cannot be considered in isolation from the underlying rationale for the warrant requirement." Kein, 565 F.2d at 189.  Moreover, "the underlying measure of adequacy in the description is whether given the specificity in the warrant, a violation of personal rights is likely."  Id. (*citations omitted*). Consequently, if the warrant provides any before the fact guidance to the executing officers as to which DVDs and/or video cassettes were pirate reproductions, there cannot be a substantial and/or unjustifiable likelihood of a violation of personal rights.

### III. ANALYSIS

The Court harbors no doubt that the evidence as presented by the Government proves beyond a reasonable doubt the guilty verdict entered by the Jury finding the defendants guilty of criminal violations to the Copyright Act.

Firstly, the Court is unmoved by defendants' *fist sale doctrine* argument averring that the Government failed to prove that the copies of the copyrighted motion pictures reproduced and distributed by them were not the subject of a first sale.  The Court is equally unswayed by defendants' allegations that the Government did not prove the existence of a document that prohibited defendants from copying said originals. On the contrary, defendants argue, "the evidence was that the copies were made from copies brought from Ingram".  It seems to the Court that defendants have failed to perceive the significant distinction between what constitutes an authorized copy which may be legally subject to the first sale doctrine and a bootleg copy which is never protected by the first sale doctrine.  As amply discussed above, the *first sale doctrine* only protects the right to re-sell and/or distribute **legally** acquired copies.  The doctrine does not, however, protect

a person who proceeds to make unauthorized reproductions of the copyrighted work. *See* Morre, 604 F.2d at 1232 ("a pirated tape that is reproduced from the original recording without authorization is plainly not the subject of the first sale."). Moreover, the evidence on record is abundant in the Government's favor. Evidence was brought forth as to defendants having a laboratory facility fully equipped with devices and materials necessary for the reproduction of motion pictures in mass quantities. The Government also presented evidence detailing that the copies being sold and distributed were not the authorized copies bought from the manufacturer but, instead **bootleg** copies reproduced in said laboratory. Recorded conversations between the defendants wherein they admitted to making various copies of said bootleg reproductions and their distribution were played to the Jury. Expert testimony was also presented indicating that the copies seized were, in fact, pirated copies. The evidence also established beyond a reasonable doubt that the unauthorized copies were being distributed and sold in their own video store. Finally, defendants themselves in their motion pursuant to Fed.R.Civ.P. 29(c) admit that **"the record also shows that defendants openly, through his stores, sold and rented said copies and later also sold and rented copies he made of the copies he legally paid for."** *Motion* at 3, ¶2. Hence, there is no doubt that pursuant, not only to the abundance of evidence presented at trial, but to the defendants own admissions, the *first sale doctrine* is absolutely inapplicable to the case at bar. More so when, at no point of the criminal proceedings, were the defendants being charged of copyright infringement regarding the sale of authorized copies, but, on the contrary, the charges were exclusively circumscribed the bootlegged copies made of the authorized copies. Simply expressed this case is not of the original copy being rented or sold. It is about photocopying from bootleg copies in massive production and/or from the original.

Defendants also raise as part of their arguments that the Government did not prove specific intent to infringe the copyright. The evidence, however, proved otherwise. During the trial, the Government brought forth sufficient evidence to establish that defendants infringed the Copyright Act while being aware that their conduct constituted the illegal violation of said act. The Government evidenced how the DVDs and video cassettes were manufactured in the laboratory and the various methods of distribution. The Government also presented evidence showing how defendants rented and sold the copies in question through their store and how they marketed said movies in bulk to wholesale clientele. The DVDs and the video cassettes object of this case all have warnings in their covers that the reproduction is illegal subject to civil and criminal sanctions and the copyrighted movies themselves in the first part of the movie have also a clear warning. **More telling still is the fact that, as the evidence shows, defendant Acevedo was the subject of a previous permanent injunction held in the District of Puerto Rico which prohibited him from distributing unauthorized copies.** He attended the injunctive relief hearing and was asked by the court if he accepted the facts of the injunctive remedy. The injunctive order was then entered in open court and notified, as court documents reflect, to the address of his defendant's video store where the search was made. Finally, defendants' own cousin, a local law enforcement officer, testified as to advising the defendants themselves as to the illegal conduct in copying and selling bootlegged copies of the motion pictures. The Court does not understand defendants' insistence in lacking of having knowledge in violation of the Copyright Act without full knowledge that their actions were, in fact, constitutive of infringement.

Defendants' third contention is that the search warrants executed on them were invalid due to them having been overly general. They further purport that said warrants did not define with

specificity the areas to be searched and that the agents were not provided with proper guidelines in order to determine which video cassette and/or DVD was an original authorized copy *vis a vis* those pirated copies. As discussed above, if a warrant is complemented by before-the-fact guidance imparted onto the executing officers, there cannot be a likelihood of a violation of personal rights, thus, validating the warrant. It is evident to the Court that, as fully proven by the Government at trial, agents were trained before the search was to take place regarding the process through which unauthorized pirated copies would be discerned from authorized copies. (The color of bootleg DVDs are not silverish but reddish and the outside of the disk artistic signs are pasted into the disk instead of being within the inside of the disk showing that they are part of the disk itself. As to the video cassette– the tapes of the bootleg copies are always of two hours instead of the duration of the plastic casing of the video. Similarly, the outer artistic signs of the description of the title are merely pasted instead of being part of the video. The quality of the outside artistic literature also does not have the same quality of coloring and art as that of the original.) Accordingly, the determination of the legality of each of the motion pictures seized was not left entirely to the agents conducting the search, but guided by previous detailed training. These search warrants delineate specific items to be searched and the object to be seized (particularly considering the before-the-fact guidance the executing agents received). Consequently, the Court is, once again, unmoved by defendants' assertions and deems the search warrants issued in the instant case valid.

      Finally, as to defendants claims that the Certificates of Registration are insufficient to establish a valid copyright, the Court directs defendants' attention to, not only the Court's previous ruling determining that they are certified by the United States Copyright Registry, but to 17 U.S.C. § 410(c). Said statute specifically defines a certificate of registration as *prima facie* evidence of the

validity of the copyright. The court is satisfied that the presented evidence is clearly sufficient. (The upper section of the certification presented in evidence is prepared by the party seeking the certificate; the lower part is prepared by the authorizing agency providing the numeration and registration of the protected work. The document then sent by the agency constituting the certificate of registration.) The court needs not enter further into defendants' unfounded argument.

## IV. CONCLUSION

For the reasons stated above, defendants' *Motion for Judgment of Acquittal Under Rule 29(c) of the Federal Rules of Criminal Procedure*, and *Supplementary Motion to Defendant's Motion Under Rule 29(c) Requesting Dismissal and Acquittal for Lack of Jurisdiction* (Docket Nos. 130, and 138 respectively) are **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23th day of February of 2006.

Daniel R. Dominguez
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**
